IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES STARK,** | : | |
| Petitioner | : | CIVIL NO. 1:CV-11-1852 |
| v. | : | **(Judge Rambo)** |
| **FRANK STRADA,** | : | |
| Respondent | : | |

## **M E M O R A N D U M**

Petitioner James Stark ("Stark"), an inmate currently incarcerated at the Low Security Correctional Institution at Lewisburg in White Deer, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on October 7, 2011, seeking an order compelling Respondent to reconsider the length of his pre-release custody placement in a residential re-entry center ("RRC") in accordance with an incentive provision in the Second Chance Act of 2007. (Doc. 1.) For the reasons that follow, the petition will be denied on the merits.

## **I.   Background**

Stark was sentenced on October 28, 2008, in the United States District Court for the Eastern District of Virginia to a sixty (60) month term of imprisonment for receipt of child pornography in violation of 18 U.S.C. § 2252A(A)(2) and 2256(8)(A). (Doc.

7-1 at 3, Ex. 1, Decl. of R. Adams.)  His projected release date is October 18, 2012. (*Id*. at 4.)

On April 9, 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 ("Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624, was signed into law.  The Second Chance Act increases the duration of pre-release placement in an RRC from six (6) to twelve (12) months and requires the Bureau of Prisons ("BOP") to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008). Thereafter, the BOP issued two guidance memoranda, dated April 14, 2008 (Doc. 7-1 at 7-16), and November 14, 2008, both of which required approval from the Regional Director for RRC placements of longer than six (6) months.  The interim regulations that passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months."  28 C.F.R. § 570.21(a).  Moreover, "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of

2

successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22 (Oct. 21, 2008).

Recommendations for RRC placement are ordinarily reviewed with the inmate and Unit Team seventeen (17) to nineteen (19) months prior to the inmate's probable release date. (Doc. 7-1 at 4.) After approval from the Warden, referrals are then forwarded to the Community Corrections Manager at least sixty (60) days prior to the maximum recommended date. (*Id*., citing BOP Program Statement 7310.04, *Community Corrections Center Utilization and Transfer Procedures*.)

On April 26, 2011, Stark's Unit Team conducted a program review to discuss his anticipated RRC placement and informed him that a RRC placement for 90-120 days would most likely be recommended. (Doc. 7-1 at 5.) The Unit Team's recommendation was based on the facts that (1) Stark had not completed any sex offender treatment programs; (2) he failed to complete any Release Preparation Program courses; (3) he is not indigent; (4) he possesses employable skills; (5) he completed several programming classes; and (6) he has a relatively short sentence. (*Id*.) Stark's Unit Team determined that his participation in skills development programming did not warrant additional RRC placement time. (*Id*. at 6.) On July 27,

2011, the proposed recommendation of 90-120 days was approved by the Warden. (*Id*.) Stark is scheduled for referral to a RRC on June 21, 2012. (*Id*.)

Prior to receiving the Warden's approval of the recommendation for RRC placement, Stark filed an informal request for administrative relief at the institutional level on July 24, 2011. (Doc. 1-2 at 2; Doc. 7-2 at 38, Ex. 2, Decl. of Susan Albert.) The request was denied as untimely. (Doc. 7-2 at 38.) Further, in the denial the Unit Manager informed Stark that his RRC recommendation was discussed with him during the April 26, 2011 program review. (*Id*.) On August 10, 2011, Stark filed a request for administrative remedy numbered 651364-F1 with the warden, challenging his RRC recommendation. (*Id*. at 39.) This request was denied as untimely. (*Id*.)

On September 2, 2011, Stark filed an appeal to the Regional Director's office. (*Id*. at 40-41.) In his appeal, Stark stated,

> On 7/24/2011, I submitted a BP-8 to Case Mgr. Adams asking him to explain how my risk of recidivism, programming, and need to establish community ties were taken into account in determining my RRC placement. I was not specifically challenging the 3-4 months placement he recommended, but rather seeking an explanation of how these three factors were figured.

(*Id*. at 41.) Stark's appeal was denied as untimely. (*Id*. at 45.) In the denial, he was informed that he could re-submit his appeal if he provided staff with justification for why his remedy request was filed late. (*Id*.)

4

On September 14, 2011, Stark filed a second request for administrative remedy numbered 651364-F2 with the warden. (Doc. 1-2 at 8-9.) The request was denied as untimely on September 19, 2011. (*Id*. at 10.)

On October 7, 2011, Stark filed the instant petition. (Doc. 1.) On December 5, 2011, an order directing service of the petition was served upon Respondent. (Doc. 4.) Respondent filed a response to the petition on December 23, 2011. (Doc. 7.) Stark's traverse followed on January 11, 2012. (Doc. 11.) Thus, the instant petition is ripe for consideration.

## II. Discussion

The habeas statute upon which Stark relies to challenge the timing of his pre-release placement, 28 U.S.C. § 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). The Third Circuit Court of Appeals has concluded that section 2241 is the appropriate means for challenging a decision to exclude an inmate from release to an RRC. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243-44 (3d Cir. 2005).

### A. Exhaustion of Administrative Remedies

Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241.  *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  *Id.* at 761-62 (citations omitted).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542.  *See* 28 C.F.R. § 542.10, *et seq.*; *Lindsay v. Williamson*, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007).  An inmate first must informally present his complaint to staff, and staff must attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a).  An inmate has twenty (20) calendar days from the date of the alleged injury within which to complete this informal resolution process.  *Id.* at § 542.14(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined.  *Id.*  If dissatisfied with the

response, he may then appeal an adverse decision to the Regional Office, and if unsuccessful on this appeal, he may appeal to the General Counsel or Central Office of the BOP. *Id*. at §§ 542.15(a) and 542.18. General Counsel has forty (40) calendar days to respond. *See id*. at § 542.18. If at any point an inmate misses a deadline imposed by the federal regulations, BOP policy requires that the inmate seek an extension of time within which to file his grievance. *See id*. at § 542.14(b). Acquisition of an extension requires that an inmate provide a "valid reason for the delay." *Id*. Finally, no administrative appeal is considered fully exhausted until a decision is reached on the merits by the BOP's Central Office. *See Sharpe v. Costello*, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the instant case, Respondent claims that Stark failed to exhaust his administrative remedies with respect to his RRC placement because his requests for administrative remedy were untimely and did not initially address the issue presented in this petition. In response, Stark contends that he was not informed of the final recommendation for RRC placement until July 20, 2011, and therefore could not timely file a request for administrative remedy from the April 26, 2011 recommendation. Because the court finds that Stark is not entitled to relief on the merits of the petition, it need not address the exhaustion argument.

### B. <u>**Merits**</u>

The BOP has authority to determine inmate placements according to 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621(b) gives the BOP authority to determine the location of an inmate's imprisonment by considering (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the sentencing court concerning the purpose for which the sentence was imposed or a recommendation of a particular type of correctional facility; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28. Section 3624(c) "describes the BOP's obligation to prepare prisoners for community re-entry by, *inter alia*, placing them in community confinement." *Woodall*, 432 F.3d at 239.

When considering an individual's eligibility for pre-release placement in a234 RRC, the BOP is required to ensure that decisions are made: (A) consistent with the five factors in 18 U.S.C. § 3621(b); (B) on an individualized basis; and (C) so that the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration. 18 U.S.C. § 3624(c)(6).

Further, an inmate's institutional programming participation and/or completion of inmate skills development programs are considered separately and apart from the

requirements of 18 U.S.C. §§ 3621(b) and 3624(c) in order to determine whether additional RRC time is warranted as an incentive pursuant to 42 U.S.C. § 17541. *See* 42 U.S.C. § 17541. This statute provides, in part, the following:

> (a) In general. The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a Federal prisoner reentry initiative:
>
> (1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons - -
>
> (A) assess each prisoner's skill level (including academic, vocational, health, cognitive, interpersonal, daily living, and related reentry skills) at the beginning of the term of imprisonment of that prisoner to identify any areas in need of improvement prior to reentry;
>
> (B) generate a skills development plan for each prisoner to monitor skills enhancement and reentry readiness throughout incarceration;
>
> (C) determine program assignments for prisoners based on the areas of need identified through the assessment described in subparagraph (A);
>
> (D) ensure that priority is given to the reentry needs of high-risk populations, such as sex offenders, career criminals, and prisoners with mental health problems;
>
> (E) coordinate and collaborate with other Federal agencies and with State, Tribal, and local criminal justice agencies, community-based organizations, and faith-based organizations to help effectuate a seamless reintegration of prisoners into communities;

>                (F) collect information about a prisoner's family relationships, parental responsibilities, and contacts with children to help prisoners maintain important familial relationships and support systems during incarceration and after release from custody; and
>
>                (G) provide incentives for prisoner participation in skills development programs.
>
>        (2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include - -
>
>                (A) the maximum allowable period in a community confinement facility; and
>
>                (B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment).

42 U.S.C. § 17541.

In his petition, Stark argues that the BOP failed to separately consider whether he should receive additional RRC placement time as an incentive reward for his participation in prison skills development programs. As relief, he seeks a full 12-month placement in an RRC. In support of his position, Stark relies on the case of *Krueger v. Martinez*, 665 F. Supp. 2d 477 (M.D. Pa. 2009), in which this court found that: (1) the agency requirement of prior Regional Director approval for 12-month RRC placements; and (2) the agency's stated position that an inmate's pre-release RRC needs can usually be accommodated by a placement of six months or less, so

restrict inmate access to the 12-month RRC programs permitted under the Second Chance Act that they constitute an abuse of discretion by the BOP. *Id.*; *see also Strong v. Schultz*, 599 F. Supp. 2d 556 (D. N.J. 2009). In *Krueger*, this court also observed that in making its particular RRC placement, the agency appeared to have failed to consider a statutory requirement under 42 U.S.C. § 17541 that the BOP use early RRC placements to create incentives for inmates to participate in educational programs. 665 F. Supp. 2d at 484-86. The court granted habeas relief, but simply directed the agency to reexamine its decision without taking into consideration the general agency policy guidance which the court found to violate the goals of the Act.

Since this holding, however, the majority view of the courts has been that the BOP's requirement of Regional Director approval, and the agency's stated view that many inmates can have their needs met through 180-day RRC placements, do not violate the Second Chance Act. *See Stokes v. Norwood*, No. 10-5645, 2010 WL 1930581, at *6 (D. N.J. May 12, 2010) (collecting cases); *see also McDonald v. Obama*, Civ. No. 1:10-cv-379, 2010 WL 1526443, at *6 (M.D. Pa. Mar. 15, 2010) (collecting cases); *Wires v. Bledsoe*, No. 09-2247, 2010 WL 427769, at *4 (M.D. Pa. Feb. 3, 2010) (finding that the record clearly established that the petitioner's unit team

gave petitioner individualized consideration for RRC placement consistent with the five factors of section 3621(b)).

In the instant case, in evaluating Stark's eligibility for RRC placement, the Unit Team considered the resources of the facility contemplated and noted that Stark has a place to live upon release. (Doc. 7-2 at 6.) The Team also considered the nature of the offense of receipt of child pornography and Stark's history and characteristics. (*Id*.) It also noted that the sentencing court made no statement concerning Stark's RRC placement and that no pertinent policy statement issued by the United States Sentencing Commission applied to him. (*Id*.) Further, Stark's Inmate Skills Development Plan indicates recommendations that would permit him to utilize prison skills development courses to assist him in the areas he most needs to improve upon in order to successfully reintegrate into society. (*Id*. at 7-19.) Specifically, the Plan notes the following with respect to Stark: (1) his academic background includes a bachelor's degree, and he possesses keyboard, word processing, and internet navigation skills, (*id*. at 11); (2) his vocational history includes seven years employment as a software tester, but he was fired from the job prior to incarceration, (*id*.); (3) he does not have sufficient family support, (*id*. at 12); (4) he is overweight and requires medication, but is not eligible for government medical assistance, (*id*. at

13); (5) he had a mental health history prior to incarceration, a history of daily marijuana and hashish use, and evidence of sexually inappropriate behavior, (*id*. at 14); (6) his cognitive behavior is impaired by his history as a sex offender, (*id*.); (7) he demonstrates an insufficient variety of behaviors to warrant overall positive personal character, and although he accepts responsibility for his crime, he has made no efforts to make amends for his crime, (*id*. at 15); and (8) his daily living assessment is adequate with the exception that he lacks a driver's license, photo identification, and does not have access to a vehicle upon release, (*id*. at 16).

As required by 42 U.S.C. § 17541, Stark's Unit Team recommended that he complete additional academic courses, complete a job skills class or two other education release preparation classes, complete a mock job fair class, participate in recreational activities, complete the victim impact group, save a portion of his income for release purposes, and complete the release preparation program. (Doc. 7-2 at 7-19.) Within its discretion, the Unit Team determined that additional placement in a RRC as an incentive was not warranted. (*Id*; *see also* 42 U.S.C. § 17541(a)(2).)

Upon review, it is clear that Stark's Unit Team complied with all the provisions of the Second Chance Act as required by 18 U.S.C. § 3621(b) and 42 U.S.C. § 17541. Specifically, the Unit Team gave him individualized consideration consistent with the

factors of 18 U.S.C. § 3621(b), and separately considered his participation in skills development programming as a possible incentive under 42 U.S.C. § 17541.  As a result, the instant petition will be denied.

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus (Doc. 1) will be denied.  An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  March 5, 2012.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JAMES STARK,**                :
                                :
    **Petitioner**          :  **CIVIL NO. 1:CV-11-1852**
                                :
    **v.**                  :  **(Judge Rambo)**
                                :
**FRANK STRADA,**               :
                                :
    **Respondent**          :

# O R D E R

**AND NOW**, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                             s/Sylvia H. Rambo
                                            United States District Judge

Dated: March 5, 2012.